[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15295
Non-Argument Calendar

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**July 27, 2005**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 03-00093-CR-DF-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES MAXWELL, JR.,
a.k.a. Sonny Spoon,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(July 27, 2005)**

Before BIRCH, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

James Maxwell, Jr. appeals his convictions for the following three counts:

possession with intent to distribute cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2; possession with intent to distribute N-benzylpiperazine ("BZP") and 1-3-Trifluoromethylenephenylpiperazine ("TFMPP"), a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2.  On appeal, Maxwell argues that the district court erred when it denied his motion to suppress the evidence seized during a traffic stop and the resulting search of his car because they were conducted without probable cause.  He further argues that the district court erred in denying his motion for a judgment of acquittal as to the firearm conviction because there was insufficient evidence that he used the firearm "during and in relation to" the drug trafficking offenses.  Finally, Maxwell argues for the first time in his reply brief that the district court erred when it sentenced him in accordance with the federal sentencing guidelines in violation of *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## I.    The Motion to Suppress

Maxwell argues that the district court erred in denying his motion to suppress the physical evidence obtained from the traffic stop and the resulting search of his car because the officers had no reasonable suspicion upon which to

2

base the stop. He asserts that the seatbelt violation was "manufactured" to justify a traffic stop based on his race and his presence in a neighborhood known for its drug activity. Maxwell also contends that the officers had neither a reasonable, articulable suspicion, nor consent, to detain him for longer than was necessary to write the citation. In response, the government argues that Officer Jones had probable cause to effectuate a traffic stop because he observed – albeit mistakenly – Maxwell not wearing his seatbelt. Regarding the duration of the stop, the government argues that the stop was reasonably prolonged once Officer Jones learned that Maxwell had a concealed and loaded weapon underneath the driver's seat.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's findings of fact to be true, unless it is shown to be clearly erroneous, and review the district court's application of the law to those facts *de novo*. *Id*. These factual findings include the district court's credibility determinations, to which we will "accord considerable deference." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (internal citation and quotation omitted). "[A]ll facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

3

"The individual challenging the search has the burdens of proof and persuasion."

*United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

### A. The Legality of the Stop

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a "reasonable suspicion" to believe that criminal activity "may be afoot." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspected legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citation omitted). In so doing, "the reviewing court must give due weight to the police officer's experience." *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1997). A decision to stop a vehicle is also reasonable under the Fourth Amendment where an officer has probable cause to believe that a traffic violation occurred. *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999).

The seminal case on the legality of traffic stops is *Whren v. United States*, 517 U.S. 806, 819 (1996), in which the Supreme Court declined to deviate from

"the traditional common-law rule that probable cause justifies a search and seizure." In other words, regardless of the officer's subjective intent at the time the traffic stop is made, as long as he has "probable cause to believe that [the defendant has] violated the traffic code," the stop will be reasonable for Fourth Amendment purposes. *Id.*

We conclude that Officer Jones was responding to a valid "be on the lookout" call when he stopped Maxwell, based on another officer's reasonable suspicion that criminal activity was afoot and his knowledge of the neighborhood's history of drug activity. Accordingly, the call was legal justification for a brief investigatory stop under *Terry*. Notwithstanding the call, however, Officer Jones also believed that Maxwell was in violation of a Georgia traffic law, thus giving him another basis to effectuate a legal stop. Even though Officer Jones later admitted at trial that his belief that Maxwell was not wearing his seatbelt was "mistaken," such a mistake of fact will not vitiate probable cause to support the traffic stop. Thus, because Officer Jones was responding to a valid "be on the lookout" call, and also observed what he thought at the time to be a seatbelt law violation, he had probable cause to effectuate the traffic stop.

### B. The Duration of the Stop

We have held that, "[u]nder *Terry v. Ohio*, an officer's investigation of a

traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). The stop must be of "limited duration," and may not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *Id.* (citation omitted). The duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). However, where the initial traffic stop is legal, the officer has "the duty to investigate suspicious circumstances that then [come] to his attention." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (quotation omitted).

We conclude that the investigation was reasonably related in scope and duration to the circumstances that led to the stop. *See Boyce*, 351 F.3d at 1106. While he wrote out the traffic citation, Officer Jones asked Maxwell whether he had any guns in the car in order to ensure his safety. Maxwell informed Officer Jones of his gun, which led to the brief search of his car. Because the investigation arose out of a valid traffic stop, the investigation into the gun and the subsequent, brief detention were valid. *Id.* Accordingly, because both the stop and the detention were both reasonable under the Fourth Amendment, we affirm the

district court's denial of Maxwell's motion to suppress.

## II. The Motion for Judgment of Acquittal

Maxwell next contends that the district court erred in denying his motion for judgment of acquittal as to the firearms charge because there was insufficient evidence that he used the firearm "during and in relation to" the drug trafficking offenses. He notes that the evidence revealed that the gun was located well beneath the driver's seat of his car and that there was no evidence that he took the gun out of the car to use it in connection with obtaining the drugs. In response, the government argues that the evidence was sufficient to sustain Maxwell's conviction because the firearm's proximity to the drugs was not merely coincidental and unrelated to the offense. Because Maxwell was arrested while transporting both the drugs and the gun, the government argues it was reasonable for the jury to infer that Maxwell used the gun for his protection while he obtained and moved the drugs and once he reached his destination.

We review the denial of a motion for a judgment of acquittal *de novo*. *See United States v. Bowman*, 302 F.3d 1228, 1237 (11th Cir. 2002). If the evidence was sufficient to support the conviction, then the motion was properly denied. *Id.* at 1238. We will not overturn a jury verdict "so long as a reasonable juror could have concluded beyond a reasonable doubt that defendant used these weapons in

7

connection with the drug trafficking offense." *United States v. Poole*, 878 F.2d

1389, 1393 (11th Cir. 1989) (internal citation omitted).

Section 924(c) provides in relevant part that an individual who, "during and

in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, shall, in

addition to the punishment provided for such crime of violence or drug trafficking

crime, be sentenced to imprisonment for five years . . . ." 18 U.S.C. § 924(c)(1).

As an initial matter, we have held that possession with intent to distribute

drugs qualifies as a "drug trafficking crime" for purposes of § 924(c). *See United*

*States v. Rivera*, 889 F.2d 1029, 1030 (11th Cir. 1989). Furthermore, Maxwell

concedes that there was sufficient evidence to prove the "carrying" element of §

924(c). Therefore, the remaining issue is whether there was sufficient evidence to

prove that the firearm found in Maxwell's car was used "during and in relation to"

the drug trafficking crime.

To establish use of a firearm "during and in relation to" a drug trafficking

crime for purposes of § 924(c), the government need not prove that the defendant

"fired, brandished, or even displayed" the gun during the drug trafficking offense;

"however, . . . the mere presence of a firearm [will] not constitute use within the

meaning of section 924(c)(1)." *Poole,* 878 F.2d at 1393. "Rather, possession of a

firearm constitutes use in relation to the drug trafficking offense if the possession is

an integral part of, and facilitates the commission of, the drug trafficking offense." *Id.* Moreover, "the presence of weapons in a location defendant used to distribute a significant quantity of illegal drugs is sufficient to submit to the jury the issue of whether defendant used the firearms in connection with a drug trafficking crime." *Id.*

For example, in *Poole*, 878 F.2d at 1393-94, when considering whether the defendant had used the firearm "during and in relation to" the drug offense, we noted that the evidence supported the inferences that "[the defendant] was engaged in selling cocaine; the guns were used to protect the house members and the cocaine; and [the defendant] knew the guns were readily accessible." Accordingly, we held that a reasonable jury could have found that the defendant used the guns during and in relation to her cocaine trafficking. *Id.* (noting that while the evidence was "far from overwhelming," it was sufficient in light of our deferential treatment of jury verdicts).

Here, the testimony that Maxwell was in possession of large amounts of cocaine, BZP, and TFMPP supports the inference that he possessed those drugs with the intent to distribute them. Also, the jury reasonably could have inferred that the loaded gun, which was discovered under Maxwell's seat and in close proximity to the drugs on the backseat, was "readily accessible." *See id*. Likewise,

9

the jury could have concluded that Maxwell's intention was to use the gun, if necessary, to protect the drugs and himself while he transported them. *Id.* Thus, the evidence was sufficient, even if not overwhelming, to support Maxwell's conviction for a violation of § 924(c). Accordingly, the district court properly denied Maxwell's motion for a judgment of acquittal, and we affirm.

## III.    The *Booker* Claim

In his reply brief, Maxwell argues for the first time that his sentence should be vacated in light of the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[1] Maxwell notes that the district court expressed at his sentencing that the guidelines' penalties for his drug offenses were "pretty stiff." He urges us to remand for re-sentencing in light of the district court's comments and in light of *Booker*.

We have consistently held that an issue not raised in an party's initial appellate brief is considered waived, and the party is prohibited from raising the issue later in the appeal. *See United States v. Njau*, 386 F.3d 1039, 1041-42 (11th Cir. 2004) (refusing to consider a claim under *Blakely* first raised in a letter

---

[1] In his reply brief, Maxwell asserts that *Booker* was not available to him when he filed his initial appellate brief. His initial brief, however, was date-stamped January 19, 2005, and the *Booker* opinion was released January 12, 2005. Moreover, Maxwell did not make reference in his initial brief to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) or *Blakely v. Washington*, 254 U.S. __ (2004), both of which are predecessor cases to *Booker*.

10

submitted pursuant to Fed. R. App. P. 28 (j)); *United States v. Levy*, 379 F.3d 1241, 1242-43 (11th Cir. 2004) (refusing to consider a *Blakely* claim first raised in a petition for rehearing).  Accordingly, because Maxwell raises this *Booker* issue for the first time in his reply brief, he has waived the argument and may not raise it on appeal.

For the foregoing reasons, we affirm Maxwell's convictions on all counts.

**AFFIRMED.**